KENNERLY, ᴇᴛ ᴀʟ. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE, ᴇᴛ ᴀʟ.

[No. 528, September Term, 1966.]

*Decided October 12, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, McWILLIAMS, FINAN, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Douglas H. Gordon* for appellants.

*C. Van Leuven Stewart* and *Robert H. Bair* with whom were *Venable, Baetjer & Howard, Joseph Allen, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *Simon Schonfield, Assistant City Solicitor,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Several individuals who object to the grant by the Board of Municipal and Zoning Appeals of Baltimore City of a variance that will permit the building of an apartment house 215 feet high in a district where height is limited to 132 feet have attempted to appeal an order of the Baltimore City Court affirming the Board.

Slote-Gordon Realty Company, an appellee, bought a lot at the northwest corner of Charles and Chase Streets, planning to build an apartment house twenty-three stories in height, to cost some $5,000,000. To be economically feasible the building would have to be 215 feet high so Slote applied for a variance. At the hearing before the Board there were many neighbors who testified that they favored the project, and why, and only one person —Douglas H. Gordon, the present lawyer for the appellants— who protested. None of the appellants appeared in person at the hearing or made known that they objected to the requested variance. Mr. Gordon gave no testimony other than his name and address, saying that he wanted "to argue the law" and that since the Board, in granting recent variances, had limited the apartment house at 1101 St. Paul Street, a block away, and Horizon House, two blocks away, and a proposed building at 1000 North Charles Street, to a height of 200 feet, the Board should be consistent and limit this apartment house to 200 feet. He suggested that the Board lacked power to grant a variance of 68 feet (from 132 to 200 feet) but "de facto, at least, we can say 200

feet is the limit to which you lately have been adhering, and I believe that you should adhere to that limit now." [1]

The Board granted the variance, finding that the proposed building would not adversely affect the health, safety and welfare of the community or the neighborhood and would have a stabilizing effect and serve the public convenience and welfare, and that "the strict application of the zoning regulations would create practical difficulties and a hardship upon the owner of the property * * * and serve no useful purpose."

The present appellants then filed a verified petition in the Baltimore City Court, in which they alleged in paragraph one that they "are residents and taxpayers of the City of Baltimore * * *," in paragraph two that Slote-Gordon had obtained a variance for a specified building of a certain size and height, and in paragraph four that the action of the Board was "capricious, arbitrary, illegal and void," and prayed that its action be reversed. The answer of the City to paragraphs one and two of the petition was that "those allegations contained therein which are matters of record are admitted." The answer of Slote-Gordon to paragraph one of the petition was that it "has no knowledge as to whether the Appellants are residents and taxpayers of the City of Baltimore * * * and, therefore, neither admits nor denies the allegations contained in Paragraph First of the Petition." Two days later Slote-Gordon, by leave of

---

1. In their brief appellants stated the fundamental question in the case to be:

"Can the Zoning Board at its own caprice change the height restrictions set by the Zoning Ordinance so as to disorganize the uniformity which it was the purpose of the Zoning Act to bring about and to which it itself has in recent years adhered at the already high level of 200 feet in a 132 foot zone solely to benefit a property owner economically?"

In argument counsel for appellants told us that the complaint of the appellants essentially was that the Board had been capricious by showing "favoritism" to Slote-Gordon by giving its building a height of 215 feet after limiting others to 200 feet, and that although the Board would, in appellants' view, be acting as illegally in allowing 200 feet as 215 feet there would have been, in all probability, no appeal from the Board's action if it had allowed only 200 feet.

court, amended its answer by adding a paragraph, which read in part as follows:

"And, further answering said Petition, the Appellee, Slote-Gordon Realty Company, says that Appellants have no legal or constitutional standing to appeal the aforesaid decision of the Board * * *."

At the hearing in the Baltimore City Court not one of the appellants testified or appeared and no evidence on their behalf was offered. Chief Judge Foster held:

"In each appeal, the appellees, when answering the petitions of the appellants, specifically deny that the appellants have any legal or constitutional standing to appeal the decision of the Board.

"Since none of the appellants appeared before the Board, or offered any evidence at the hearing before this Court, there is no proof present that the appellants are taxpayers. The record is also devoid of any proof that the appellants are aggrieved by the action of the Board in granting the variances. Under these circumstances, the motion of Slote-Gordon to dismiss the appeal petitions must be granted."

Judge Foster went further and, assuming the appellants had standing, said: "there was little evidence before the Board that there existed any 'practical difficulty' which would justify the Board in granting the variances sought."

We agree with Judge Foster that the appellants have no standing to appeal. Maryland Rule B 3 provides that an appeal from an Administrative Agency may be taken "by a person now or hereafter authorized by statute to appeal." The State Enabling Act, Code (1967 Repl. Vol.), Art. 66B, § 7 (j), provides that "Any person * * * aggrieved by any decision of the board of zoning appeals or any taxpayer * * * may appeal to a court of record on the ground that such decision is illegal in whole or in part." Section 45 (a) of the Baltimore City Zoning Ordinance (Baltimore City Code 1966) provides that "any person * * * aggrieved by any decision of the Board * * *, or any taxpayer * * * may present to the Baltimore City Court a pe-

tition, duly verified, setting forth that such decision is illegal * * *."

The appellants do not contend that they ever have alleged or shown that they are aggrieved by the decision of the Board or, indeed, that in fact or law they actually are aggrieved. The record gives no hint of their aggrievement. The nearest address of any appellant (revealed only in the caption of the petition of appeal)—which could be merely a mailing address rather than a residence or business address—is three blocks from the proposed apartment house. There is nothing in the record to indicate where any of the appellants reside or where the properties they allegedly own are located. Clearly, the appellants have shown no standing to appeal as aggrieved persons.

Their claim that they had standing in the City Court and have standing here as taxpayers likewise must fail. Under the wording of the statutes and the decision in *City of Baltimore v. Byrd,* 191 Md. 632, they are right in their contention that a showing they were taxpayers, without a further showing of aggrievement, would give them standing. Their fatal difficulty is that they have not shown they were taxpayers.

They claim that their allegation under oath that they were taxpayers is enough. The law is against them. A verified pleading does not of itself constitute evidence of the facts alleged therein. *Brashears v. Lindenbaum,* 189 Md. 619, 628-29; *Webster v. Archer,* 176 Md. 245, 250-53; *Farmer v. Assoc. Professors of Loyola College,* 166 Md. 455, 461. The City admitted only facts of record, meaning, we take it, facts established in the record before the Board. Slote-Gordon neither admitted nor denied the allegation as to the standing of the appellants and this operated as a denial. Md. Rule 372 a 2. In addition Slote-Gordon asserted in its answer that appellants had no legal or constitutional standing to appeal.

The verification of the appellants' petition of appeal did not impose upon the City or Slote-Gordon any other or greater burden than would have been necessary if the pleading had not been verified. Md. Rule 303 b 5. The status of appellants definitely was put at issue and appellants did nothing thereafter to show their standing. We said in the zoning case of *Town of Somerset v. Board,* 245 Md. 52, 63 :

"When the issue of the standing of an appellant to appeal is raised in the court in which review of the administrative action is asked, we have approved the practice of trial judges in permitting testimony on the point to be taken before them, see *e.g., Chatham Corp. v. Beltram,* 243 Md. 138, 148, 220 A. 2d 589 (1966) and *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966). The question is not one of taking additional testimony on the merits of the substantive issues decided by the Board [compare *Suburban Properties, Inc. v. Rockville Council,* 241 Md. 1, 5-6, 215 A. 2d 200 (1965) and cases therein cited], but of determining whether the appellants have the requisite standing to have those issues reviewed."

In *Brashears v. Lindenbaum, supra* (an appeal from a decision of a liquor board), the Court said (at pp. 628-29 of 189 Md.) :

"These jurisdictional facts [showing standing to appeal] should appear from the record, and in the event of dispute, should be resolved by the Circuit Court where testimony can be taken. Aside from the affidavits filed here, there is no showing that appellants are qualified [to appeal]."

See also *Glen Burnie Improvement Association, Inc. v. State Appeal Board,* 213 Md. 407, 411-13, and *Bryniarski v. Montgomery Co.,* 247 Md. 137, 145-6.

It is established that if the record does not show that at least one appellant has standing the appeal is subject to dismissal. *Improvement Assoc. v. Raine,* 220 Md. 213; *cf. Stocksdale v. Barnard,* 239 Md. 541, 544 and *Bryniarski v. Montgomery Co., supra.*

Our dismissal of the appeal is not to be taken as showing that if the appeal properly was here we would affirm the Board. To grant a variance the Board must find from the evidence more than that the building allowed would be suitable or desirable or could do no harm or would be convenient for or profitable to its owner. The Board must find there was proof of "urgent neces-

sity, hardship peculiar to the particular property, and a burden upon the owner not justified by the public health, safety and welfare." *M. & C. C. v. Polakoff,* 233 Md. 1, 9. The Board does not satisfy these requirements by merely saying in the words of the statute, as it did in the present case, that it finds them to exist. Specific reasons, specific bases to support the finding must be revealed by the evidence before the Board.

*Appeal dismissed, costs to be paid by the appellants.*